E-FILED
Wednesday, 17 July, 2019 04:30:59 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cr-30037 |
| | ) | |
| QUINTON D. BRADLEY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Quinton D.
Bradley's Motion to Quash Search Warrant and Suppress Evidence (d/e
21) (Motion). On May 14, 2019, the Court conducted a hearing on the
Motion. Defendant Bradley appeared in person and with his attorney
Assistant Federal Defender Robert Alvarado. The Government appeared
by Assistant United States Attorney Gregory Gilmore. At the conclusion of
the hearing, the Court took the matter under advisement. Upon careful
consideration of the evidence presented at the hearing, the Motion, the
briefs submitted by the parties, and the applicable law, this Court
recommends that the Motion should be DENIED.

## STATEMENT OF FACTS

On December 7, 2016, Mattoon, Illinois, police officers went to a Super 8 Motel located in Mattoon to investigate a reported burglary. Upon arrival, the officers noticed three individuals asleep in a Toyota automobile in the parking lot. The three individuals were Bradley, a 19-year-old woman identified as A.A., and a 15-year minor girl identified as S.C. The officers questioned them. The officers determined that S.C. had been reported as a missing juvenile in Sangamon County, Illinois. The officers took S.C. into protective custody and took Bradley and A.A. into custody for questioning. Transcript of Proceedings (d/e 25) (T.), 6-9. A.A. gave the officers permission to search the automobile. The officers found four cell phones, a laptop computer (Collectively the "12/7 Phones"). One of the 12/7 Phones was an iPhone 5 Model A1429 (Subject Phone). One of the occupants of the vehicle identified the Subject Phone as belonging to Bradley. See T. 11.

The officers attempted to interview all three individuals. S.C. and Bradley refused to answer questions. T. 9. A.A. agreed to talk to the officers. The officers made an audiovisual recording of the interview. A.A. said she was in Mattoon with S.C. and Bradley for "dates." She said the

three of them set up dates for her and S.C. on a website called Backpage.

A.A. described the dates:

> And she described the dates as they were arranged for a
> meeting with a man who she referred to as "a client," either in a
> motel or at the client's house.  And they had arranged (sic) on a
> price and she cited one price being $200 for a half hour; and
> when the date was over, then, then they were finished.

T. 9-10.  A.A. said, "If [sex happens], I choose it to happen.  I'm not being

paid for sex."  Id.

A.A. said that Bradley drove her and S.C. to dates and provided

protection if anything went wrong on a date.  She stated that she gave

Bradley half the money that the clients paid for the dates.  A.A. said that

Bradley put advertisement on Backpage for A.A. and S.C. and also

communicated with clients by text message to negotiate rates and set

times and locations.  T. 10-11.

The Mattoon officers released A.A. and Bradley within a day or two of

the arrest.  The Mattoon officers gave Bradley a copy of an order of

protection directing him to stay away from S.C.  T. 18.  The officers

returned S.C. to her parents in Sangamon County.  T. 11.  Bradley states

in his affidavit, admitted as Defendant's Exhibit 1, that he asked for the

Subject Phone when released from custody.  Bradley states that the

Mattoon officers refused to return the Subject Phone to him unless he

agreed to unlock it and let them examine the data on the phone.  Bradley

said he refused and left without his phone.  Defense Exhibit 1, Affidavit of

Quinton Bradley, ¶ 4.  FBI Special Agent David Harmon testified that the

Mattoon Police Department had no record of Bradley asking for the return

of the Subject Phone and no employee of the Mattoon Police Department

remembered Bradley asking for the return of the Subject Phone.  T. 16.

On December 12, 2016, Mattoon police officers turned the 12/7

Phones over to FBI Special Agent Christopher Bockelmann.  T. 11.

Bockelmann was a former St. Louis, Missouri, area police officer.  He

graduated from the FBI academy in or around August 2016.  He was

assigned to the Springfield office for training.  Harmon was training

Bockelmann at this time.  T. 5-6, 43-45.

On December 20, 2016, Bockelmann received notice that he would

be transferred to the Fairview Heights/East St. Louis, Illinois area (Fairview

Heights).

On December 21, 2016, Bradley was charged in Illinois Circuit Court

for Sangamon County with violating the order of protection by entering the

home of S.C.'s parents on December 16, 2016; chasing and harming S.C.;

and damaging property in the home.  T. 12-13.

On December 22, 2016, Bradley, A.A., and S.C. were stopped in Mattoon for a traffic stop.  A person named C Ell Jason Alan Ivy was also in the car.  A.A. was driving.  The officers took S.C. into protective custody and arrested A.A. and Bradley.  At the time of the arrest, S.C. was searched and two cell phones (12/22 Phones) were found on her person. T. 14.

Bradley was kept in custody due to the outstanding charge against him in Sangamon County, filed on December 21, 2016, which was based on the Defendant's actions at the home of S.C. on December 16, 2016. T. 13-14.  Bradley has remained in custody since then.  Bradley asked for permission for A.A. or S.C. to use one of 12/22 Phones to arrange for a ride.  The officers refused his request.  The Officers retained the 12/22 Phones. T. 14-15.

Bradley states in his affidavit that after he was in jail, he spoke to his mother, Sharee Dozier, and asked her to retrieve the Subject Phone. Bradley Affidavit, ¶ 6.  Dozier states in her affidavit, admitted as Defendant's Exhibit 2, that she called the Mattoon police department three times and the Sangamon County Jail once to request the release of the Subject Cell.  Motion, Exhibit 2, Affidavit of Sharee Dozier, ¶¶ 4-10.

The Coles County Jail and the Sangamon County Jail (collectively the Jails) recorded all inmate calls.  The Jails recorded 11 calls between Bradley and Dozier.  T. 30.  Harmon listened to all of Bradley's recorded calls, including those with Dozier.  During the calls, Bradley never asked his mother to retrieve the Subject Phone or any other phone.  Harmon also checked with Mattoon police officials, and no one recalled any calls from anyone requesting any of Bradley's personal property.  T. 29-30.

On December 27, 2016, Bockelmann and FBI Office Support Technician Krystin Kohlrus prepared a Case Opening Memorandum for the investigation of Bradley's possible sex trafficking of the child victim S.C., admitted as  Defendant's Exhibit 4.  The Memorandum stated that Bockelmann would immediately seek a warrant to search the 12/7 Phones, including the Subject Phone. Case Opening Memorandum, at 5.  Harmon had told Bockelmann that he needed a warrant to search the data on the phones taken by the police on 12/7/2016 (the 12/7 Phones), including the Subject Phone.  Harmon did not recall telling Bockelmann that he had to get the warrant "immediately."  T. 45.  Based on the information Harmon had received from Bockelmann, Harmon believed Bockelmann had enough information to argue that probable cause existed to secure a warrant to search the 12/7 Phones, including the Subject Phone.  T. 46, 56.

On January 5, 2017, Bradley was transported to the Sangamon County Jail.  Bradley had no visitors at the Coles County Jail prior to the transfer to Sangamon County.  Bradley had no visitors at the Coles County Jail during his detention from December 23, 2016 to January 5, 2017.  T. 30.

On January 7, 2017, Bockelmann transferred to Fairview Heights. From December 20, 2016, to January 8, 2017, Bockelmann spent much of his time arranging for the move of his family from Springfield to Fairview Heights.  T. 56.  On January 9, 2017, Harmon became the FBI Special Agent on this case. Harmon did not recall reviewing the Case Opening Memorandum or other evidence related to this investigation until the case was assigned to him on January 9.  T. 45.

The Springfield FBI Office had approximately 20 Special Agents.  Ten of these Special Agents were administrators who did not investigate ongoing cases.  T. 39.  The other ten Special Agents handled all the investigations for all types of cases in 15 counties in Illinois.  Harmon was the only agent in the Springfield FBI office assigned to investigate sex-trafficking of minors.  T. 58.  He also had responsibility over financial crimes investigations and civil rights investigations.  T. 58.  Harmon had numerous cases assigned to him.  See T. 18-21, 27, 59-60.

On January 8, 2017, Bradley talked to S.C. by telephone. The call was recorded, as were all outgoing calls by persons in custody. They discussed the fact that the Mattoon police still had their telephones and a laptop computer. They did not discuss requesting the return of the phones from law enforcement. T. 33-34.

On January 12, 2017, Harmon went to Gallatin, Tennessee to interview subjects in connection with a financial crime investigation.

On January 17, 2017, Harmon interviewed a juvenile victim in a different case. T. 19.

On January 18, 2017, Harmon had to perform a background check of a presidential appointee. T. 19.

On January 24, 2017, Harmon attended a change of plea hearing for defendant Calvin Williams in an unrelated child sex trafficking case. At the hearing, Williams decided not to change his plea, but to go to trial on April 25, 2017. United States v. Williams, C.D. Ill. Case No. 16-30036, Minute Entry dated January 24, 2017.[1] Harmon thereafter spent much significant time preparing for the scheduled trial. T. 20. On March 7, 2017, the trial

---

[1] The Court takes judicial notice of the docket of the Williams case.

was continued to July 11, 2017.  United States v. Williams, C.D. Ill. Case

No. 16-30036, Text Order entered March 7, 2017.[2]

On January 26, 2017, Harmon obtained the phones taken by the

Mattoon police on 12/22/2016 (the 12/22 Phones) from Mattoon police

officials.  T. 20.  Harmon also viewed the video recordings of the December

7-8, 2017 and December 22, 2017 interviews of A.A., Bradley, and S.C.  T.

21.

On January 31, 2017, Harmon received financial reports related to a

financial fraud case.  The subject of the investigation was indicted in May

2017 and convicted in April 2018.  T. 21.

On February 2, 2017, Harmon participated in a meeting with the

Department of Veterans Affairs related to a financial crimes investigation.

The investigation led to an indictment in June 2017 and a conviction in April

2018. T. 21.

On February 2017, Harmon received pursuant to a subpoena 366

pages of records from the Backpage website concerning Bradley.

Backpage was a website that contained numerous advertisements for

prostitution.  Persons responded to the ads by text or phone call.  T. 22-23.

---

[2] On March 16, 2018, Williams ultimately pleaded guilty to one count of his superseding indictment.
United States v. Williams, C.D. Ill. Case No. 16-30036, Minute Entry dated March 16, 2018.

On February 7, 2017, Harmon received information about a subject in Lincoln, Illinois, allegedly distributing child pornography.  T. 23.

On February 10, 2017, Harmon interviewed A.A.  At this interview, A.A. admitted that she was a prostitute and that S.C. was a prostitute.  She said Bradley was a pimp.  He communicated with the "johns", set up the dates, provided transportation, and took money for these activities.  A.A. stated that Bradley and S.C. introduced A.A. to Backpage and got her involved in prostitution.  A.A. said that Bradley knew S.C. was 15 years old. A.A. said Bradley and S.C. used any phone they had to get on Backpage and set up ads, and to communicate with "johns".  A.A. said that she had quit prostitution at the time of the interview.  T. 24, 55.  Harmon wanted an admission from A.A. that she was engaged in prostitution to support the warrant application he planned to prepare to search the Subject Phone and the other 12/7 Phones as well as the 12/22 Phones.  T. 48.

On February 13, 2017, Bradley talked to a Ms. Taylor by telephone. The call was recorded.  Bradley told Taylor that the phones were still in Mattoon but were locked and the police could not get into them.  Bradley said he was going to get his phones when he was released.  He did not ask Taylor to retrieve the phones.  T. 35.

On February 17, 2017, Harmon investigated allegations of an online child enticement of a victim in Havana, Illinois.  T. 24.

On March 2, 2017, Harmon investigated human trafficking in Litchfield, Illinois.  On March 7, 2017, Harmon started investigating possible forced labor and human trafficking in Lincoln, Illinois.  Harmon conducted investigations on all these cases.  On March 15, 2017, Harmon opened a formal investigation of a subject in Lincoln, Illinois for forced labor and human trafficking.  Harmon then conducted interviews in connection with this investigation.  T. 25.

On March 20, 2017, Harmon testified at a motion to suppress in a child pornography case.  T. 25.

On March 22, 2017, Harmon opened a formal investigation of the child enticement case from Havana, Illinois, and opened a formal investigation in the child pornography case in Lincoln, Illinois.  Each of these child victim cases involved interviewing available victims, parents, and other people with relevant information, as well as issuing subpoenas for records and reviewing records.  T. 26.

On March 29, 2017, Harmon worked on an investigation of the murder of two girls in Dephi, Indiana.  Harmon spoke to detectives,

obtained police reports, related reports such as interview reports.  Harmon
also wrote reports on this matter.  T. 27.

In April 2017, Harmon worked on the cases noted above that he
opened in March, as well as other cases assigned to him.  Harmon had 12
active cases that he worked on in April.  Harmon testified that he was
swamped with work.  T. 27.

On April 10-11, 2017, Bradley's mother, Dozier, and others visited
him in the Sangamon County Jail.  Bradley's visitors were taking
photographs of him.  Sangamon County Jail staff terminated the visit and
instructed the visitors to delete the pictures.  Bradley spoke to Dozier by
phone after the visit. Dozier and Bradley did not discuss recovering
possession of the Subject Phone or any other phone.  T. 31-33.

On May 1, 2017, Bradley called his mother (Dozier), and the call was
again recorded by the Sangamon County Jail.  He told her that the feds
were looking at him to make a case against him  T. 68.  Bradley used
another inmate's telephone minutes to make the call.  On cross
examination, Harmon stated he did not know if Bradley made other calls
using other inmate's minutes.   T. 66.

On May 2, 2017, Harmon presented the warrant application and
supporting affidavit to U.S. District Judge Myerscough for a warrant to

search the information on the Subject Phone.  Judge Myerscough issued the warrant and Harmon searched the data on the four 12/7 Phones, including the Subject Phone, and the two 12/22 Phones.  Harmon was looking for, among other things, a connection between the information on the Subject Phone and the advertising information secured from Backpage. T. 47.

On cross-examination, Harmon testified that May 2, 2017 was the earliest he reasonably could have sought the warrant to search the Subject Cell because of his other work.  Harmon testified that he had "30 priorities" and securing the warrant for the Subject Cell was one of them.  T. 59. Harmon said he had other cases where the alleged perpetrators were still on the streets and victims were calling him.  He testified that unlike Bradley, the suspects were not in custody.  T. 60; see T. 26.

Bradley was represented by counsel while he was in custody in the Sangamon County Jail in 2017.  His counsel did not move for the return of the Subject Phones or any of the 12/7 or 12/22 Phones.  Neither Bradley nor his counsel made a written request for the return of the Subject Phone. Bradley's counsel in this case has not filed a motion under Federal Rule of Criminal Procedure 41(g) for the return of the Subject Phone.  T. 35.

In August 2017, Bradley pleaded guilty to state charges of domestic battery on S.C. and also a drug charge.  He was sentenced to imprisonment in the Illinois Department of Corrections (IDOC).  T. 61.

On June 28, 2018, a criminal complaint was filed against Bradley in this case and an arrest warrant was issued.  On June 28, 2018, Harmon went to IDOC facility in Vandalia, Illinois and arrested Bradley pursuant to the warrant.  Bradley has remained in federal custody since. T. 36-37. After Bradley's initial appearance, Harmon contacted Bradley's attorney to make arrangement for someone to pick up Bradley's personal property.  A relative of Bradley named Amanda Harris picked up the personal property. Harris did not mention the return of any phones at that time.  T. 38. Bradley's mother Dozier stated in her affidavit that she did not know the federal authorities were investigating her son until Harmon arrested him on June 28.  Dozier Affidavit ¶ 12.

## ANALYSIS

Bradley asks the Court to suppress the data found on the Subject Phone because he claims that the search of the Subject Phone violated his Fourth Amendment right to be free from unreasonable searches and seizures.  Bradley asserts that the search violated his rights because Harmon and Bockelmann waited too long before seeking a warrant to

search the Subject Phone.  The Mattoon police officers took possession of the Subject Phone on December 7, 2016.  Harmon did not seek a warrant until May 2, 2017.  Bradley argues that this delay was unreasonable and the subsequent search pursuant to the warrant violated his rights.  Bradley does not challenge any other aspect of the warrant or the search.

A law enforcement officer may temporarily seize property without a warrant if the officer has probable cause to believe that that object contains contraband or evidence of a crime.  The officer, however, must obtain a warrant within a reasonable time to search the contents of the object.  When the officer fails to seek a warrant in a reasonable amount of time, the seizure and subsequent search violates the Fourth Amendment.  United States v. Burgard, 675 F.3d 1029, 1032 (7th Cir. 2012) (internal citations omitted).

To determine the reasonableness of the delay, the Court must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  Burgard, 675 F.3d at 1033 (quoting Place, 462 U.S. 696, 703 (1983).  The Court must consider all the facts and circumstances in weighing these interests.  See United States v. Mitchell, 565 F.3d 1347, 1351 (11th Cir. 2009).  The government bears the burden of

proof in this matter.  The government must establish by a preponderance of

the evidence that the weight of the relevant factors show that the delay was

reasonable.  See e.g., United States v. Stewart, 902 F.3d 664, 674 (7th Cir.

2018).

In this case, the delay affected Bradley's  possessory interest in the

Subject Phone.  Burgard, 675 F.3d at 1033.  Bradley argues that the

Supreme Court's decision in Riley v. California, 573 U.S.373, 393 (2014),

indicates that a person's privacy interest is at stake when officers take

possession of a cell phone and delay seeking a warrant.  The Court

disagrees.  The Riley decision held that a person's privacy interest was

implicated when the officers searched the content of a person's cell phone.

Such searches required a warrant absent some other applicable exception

to the warrant requirement.  Riley, 573 U.S. at 401-02.  In this case, no

officer searched Bradley's Subject Phone without a warrant.  The

warrantless invasion of Bradley's privacy, therefore, is not at issue.  The

delay in securing the warrant is the only issue.  That delay affected

Bradley's possessory interest, not his privacy interests.  Burgard, 675 F.3d

at 1033.[3]

---

[3] The Burgard decision also clearly states that the interest at stake in this circumstance is the possessory
interest of the defendant and not the privacy or liberty interest.  Burgard, 675 F.3d at 1032.  This Court
must follow the Seventh Circuit's holding unless it is "powerfully convinced" that the Seventh Circuit would
overrule its decision at the first opportunity.  See Sokaogon Chippewa Community v. Exxon Corp., 805 F.

Whether Bradley sought the return of the Subject Phone is relevant to evaluating the importance of the Subject Phone to Bradley, and so, the impact of the seizure on his possessory interest. Burgard, 65 F.3d at 1033. The Court finds that it is more likely than not that Bradley did not seek the return of the Subject Phone. The statements of Bradley and his mother Dozier in their affidavits that Bradley called Dozier after he was jailed and asked her to retrieve the Subject Phone are not credible. The Coles County Jail recorded all these calls. Bradley never asked Dozier to retrieve the Subject Phone in any of these calls. The statements by Bradley and Dozier regarding any request by Bradley or any effort by Dozier to retrieve the Subject Phones are not credible.

Bradley argues that the Jails may not have recorded all his calls. Bradley notes that he called at least once on another inmates account. Bradley also argues that he may have asked Dozier between December 7 and December 22, 2017, to retrieve the Subject Phone. These arguments are not persuasive. The Government must prove its case by a preponderance of the evidence. The Jails recorded 11 calls between Bradley and Dozier. None of those recordings contain any reference to

Supp., 680, 696 n. 14 (E.D. Wis. 1992); see also Reiser v. Residential Funding Corp., 380 F.3d 1027, 1029 (7th Cir. 2004). The Court is not "powerfully convinced".

retrieving the Subject Phone or any of Bradley's personal property.
Although the Jails might have missed recording a phone call, it is still more
likely than not that the Jails recorded all the calls. The recordings show
that it is more likely than not that Bradley never asked Dozier to retrieve a
phone.

Bradley argues that he could have asked Dozier to retrieve the
Subject Phone when he was not in custody between December 7 and
December 22, 2016. See Memorandum in Support of Motion to Quash
Search Warrant and Suppress Evidence (d/e 26), at 6-7. Bradley,
however, stated in his affidavit that he asked Dozier after he was in jail to
retrieve the Subject Phone. His affidavit contradicts this theory. Bradley's
willingness to contradict his affidavit further diminishes his credibility. The
evidence shows that it is more likely than not that he did not ask Dozier to
retrieve the Subject Phone and Dozier did not attempt to do so.

Bradley's willingness to make these incredible statements in his
affidavit diminishes the credibility of his other statements in the affidavit,
specifically, his claim that he asked for the Subject Phone on his release
from custody on December 7, 2016. The Mattoon police department had
no record of his request for the Subject Phone and no officer recalled any
such request. In light of Bradley's lack of credibility, and the lack of any

corroborating evidence, the Court finds that it is more likely than not that Bradley did not ask for the Subject Phone when he was released on December 7, 2016.

Bradley's detention and incarceration since December 22, 2016, is also a factor.  Bradley could not personally possess or use the Subject Phone once he was arrested and detained on December 22, 2016.  As a result, his possessory interest in custody was minimal.  See United States v. Sullivan, 797 F.3d 623, 633 (7th Cir. 2015); see also Segura v. United States, 468 U.S. 796, 814 (1984) (possessory interest in an apartment was "virtually nonexistent" while in custody); United States v. Clutter, 674 F.3d 980, 984-85 (8th Cir. 2012) (seizure of computer while defendant was in custody did not meaningfully interfere with the defendant's possessory interest).

The Court finds that Bradley had little significant possessory interest in the Subject Phone.  The weight of the evidence also shows that he did not ask for the Subject Phone back, either when he was released on December 7, 2016, or thereafter.  From December 22, 2016, onward he was in custody, and so, had only a minimal possessory interest in the Subject Phone.  He told Taylor that he would just wait until his release to recover the Subject Phone.  He showed very little interest in securing

possession of the Subject Phone. Based on the evidence, Bradley had little or no possessory interest in the Subject Phone after December 7, 2016.

Beyond Bradley's possessory interests, the Court must also weigh the impact of the delay in seeking the warrant on the criminal justice system. "[U]nnecessary delays also undermine the criminal justice process in a more general way: they prevent the judiciary from promptly evaluating and correcting improper seizures. Thus the 'brevity' of the seizure is 'an important factor' for us to weigh." Burgard, 675 F.3d at 1033. In this case, the 146-day delay was significant. The Court must consider this factor when weighing the opposing interests of the government.

The opposing governmental interests include the strength of the basis for the seizure of the property. The government has a stronger interest in detaining property based on probable cause rather than reasonable articulable suspicion. "All else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures." Burgard, 675 F.3d at 1033. The Court must also weigh whether the government "acted with diligence," when pursuing the investigation and securing the warrant. Burgard, 675 F.3d at 1033.

The Government had a strong interest in maintaining possession of the Subject Phone.  The Government had probable cause when they took the 12/7 Phones.  The officers had probable cause to arrest Bradley for endangering the minor S.C.  A.A's interview established that she and S.C. were engaging in the business of having dates for money where sex occurred.  A.A. further stated that Bradley took half the money and provided transportation and protection.  Combined with the circumstances of the December 7, 2016 stop, A.A's statements provided probable cause that A.A. and S.C. were engaged in prostitution, and that Bradley was acting as their pimp.

Moreover, the Subject Phone was evidence of Bradley's activities as a pimp for the purpose of prostitution.  A.A. stated on December 7, 2016, that she and S.C. had dates for money during which sex sometimes occurred.  She said they used cell phones to set up the dates.  The 12/7 Phones, including the Subject Phone, taken from the car on December 7, 2016, corroborated A.A.'s testimony.  The Subject Phone, therefore, was evidence regardless of the content of the Subject Phone.  The government had strong interests in maintaining possession of the Subject Phone.

Harmon, however, took a long time to secure the warrant to search the phone.  Bradley notes that Bockelmann stated before he turned the

case over to Harmon, that the warrant should be secured "immediately".

Harmon testified that he wanted to secure A.A.'s admission that she was

engaged in prostitution before securing the warrant.  He also wanted to

review 366 pages of data from Backpage.com relating to Bradley before he

secured the warrant.  He did not complete these tasks until February 2017.

The Court finds that Harmon made a reasonable decision to complete

these aspects of the investigation before securing the warrant.

Harmon also had to allocate his time between this case and many

other important matters.  He had to spend considerable time from late

January to early March 2017 to prepare for the Williams trial.  He was

responsible for all of the sex-trafficking investigations in the 15 counties

covered by his office.  These cases involved situations where suspects

were still at large putting others at risk.  Bradley was in custody on other

charges.  He was not an ongoing risk to anyone.  Harmon also had

responsibilities for other matters, including financial crimes and background

checks on Presidential appointees.

Extended delays in seeking warrants have been found to be

reasonable when the impact on the possessory interest was slight and the

government demonstrated a good reason for the delay.  See United States

v. Christie, 717 F.3d 1156, 1163-64 (10th Cir. 2013) (five-month delay was

reasonable when defendant's husband consented to the seizure of the computer, the defendant did not seek the return of the computer, and the agent was called away to help with another case); United States v. Stabile, 633 F.3d 219, 235-36 (3$^d$ Cir. 2011) (Three-month delay in seeking warrant was reasonable when Defendant's cohabitant consented to search of home and seizure of hard drives, the Defendant did not seek return of the property, and the lead agent had to attend to other law enforcement priorities.).  The possessory interests of the defendants in Christie and Stabile were reduced because a person with authority consented to the seizures.   That did not occur here.  Still Bradley's possessory interest was minimal at best due to his lack of interest in retrieving the Subject Phone and his detention and incarceration.  The lack of any significant possessory interest, these cases are instructive here.

After considering all the factors, the Court concludes that the weight of the evidence supports the government's contention that the delay did not violate Bradley's Fourth Amendment rights.  Bradley had minimal possessory interest in the Subject Phone after December 22, 2016, because he was in custody.  The government had probable cause to support taking possession of the Subject Phone.  The 12/7 Phones, including the Subject Phone, were potential evidence to corroborate A.A.'s

statements that Bradley used phones to get dates for prostitution. Harmon acted with diligence. He had many cases to work. He worked this case as part of his caseload considering the importance and the circumstances of all the cases. Upon consideration of all the circumstances, the Court finds that the delay was reasonable in this case. The Court, therefore, recommends that the Motion should be denied.

Bradley urges the Court to follow United States v. Pratt, 915 F.3d 266 (4th Cir. 2019). In Pratt, the Court found that a 31-day delay in obtaining a warrant was unreasonable. The defendant in Pratt, however, was not in custody and did not otherwise diminish his possessory interest in the phone during the delay the officers took to secure a warrant. Id. at 270, 272. In this case, Bradley did not ask for the return of the Subject Phone and Bradley's interest was significantly diminished once he was in custody. The 12/7 Phones were also possible evidence to corroborate A.A.'s statements on December 7, 2016. The government here further demonstrated that Harmon had to balance many competing interests in many important cases. He addressed this case with diligence in light of the competing priorities. The Pratt court acknowledged that officer workload considerations and a defendant's diminished privacy interest in a particular

circumstance could justify a delay in securing a warrant.  Id. at 272.  The holding in Pratt does not apply.

Bradley also argues that Mitchell applies.  In Mitchell, the officers took a hard drive from the defendant's home desktop computer but delayed securing a warrant for 21 days because the officer left to take a training course.  Id. at 1349.  The defendant in Mitchell also did not diminish his possessory interest in the hard drive in any material way while the officers delayed securing a warrant.  The officer who delayed securing the warrant also was not balancing the demands of competing cases but left to take a training course.  Here, Harmon had to balance the demand of other important criminal and law enforcement matters.  The Mitchell court acknowledged that officer workload considerations could justify a delay in seeking a warrant.  Mitchell, 565 F.3d at 1353.  Given Bradley's diminished possessory interest in the Subject Phone and the diligence of Harmon to pursue this case, the Court finds that the Mitchell decision does not apply.  In this case, under these circumstances, the balance of the competing interests weighs in favor of finding that the delay in securing the warrant did not violate Bradley's Fourth Amendment rights.

THEREFORE, THIS COURT RECOMMENDS that Defendant Quinton D. Bradley's Motion to Quash Search Warrant and Suppress Evidence (d/e 21) should be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file a timely objection will constitute a waiver of objections on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local Rule 72.2.

ENTER:   July 17, 2019

_s/ Tom Schanzle-Haskins_
UNITED STATES MAGISTRATE JUDGE